```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                                 - - -
    FATPIPE, INC.
 4                                         :   CIVIL ACTION NO.
                 Plaintiff,                :
 5  v                                      :
                                           :
 6  VIPTELA, INC.,                         :
                                           :   16-182-LPS-CJB
 7               Defendant.
                                   - - -
 8
                          Wilmington, Delaware
 9                      Friday, September 2, 2016
                          Telephone Conference
10
                                   - - -
11
    BEFORE:  HONORABLE LEONARD P. STARK, Chief Judge
12
                                   - - -
13  APPEARANCES:

14
              POTTER ANDERSON & CORROON, LLP
15            BY:  BINDU A. PALAPURA, ESQ.

16                 and

17            PERKINS COIE, LLP
              BY:  STEVEN M. LUBEZNY, ESQ.
18                 (New York, New York)

19                    Counsel for Plaintiff

20
              MORRIS NICHOLS ARSHT & TUNNELL, LLP
21            BY:  RODGER D. SMITH, II, ESQ.

22                 and

23

24
                                     Brian P. Gaffigan
25                                   Registered Merit Reporter
```

```
 1   APPEARANCES:  (Continued)

 2
                McGuireWOODS, LLP
 3              BY:   JASON W. COOK, ESQ., and
                      SHAUN W. HASSETT, ESQ.
 4                  (Dallas, Texas)

 5                  and

 6              McGuireWOODS, LLP
                BY:   RACHELLE H. THOMPSON, ESQ.
 7                  (Raleigh, North Carolina)

 8                      Counsel for Defendant
```

                                - oOo -

                          P R O C E E D I N G S

   (REPORTER'S NOTE:  The following telephone conference was held in chambers, beginning at 1:16 p.m.)

   THE COURT:  Good afternoon, everybody.  This is Judge Stark.  Who is there, please?

   MR. SMITH:  Good afternoon, Your Honor.

   MS. PALAPURA:  Good afternoon, Your Honor. This is -- good afternoon, Your Honor.  Bindu Palapura from Potter Anderson on behalf of plaintiff, FatPipe.  With me is Steven Lubezny from Perkins Coie.

   MR. LUBEZNY:  Good afternoon, Your Honor.

   THE COURT:  Good afternoon.

1           MR. SMITH:  Good afternoon, Your Honor.  Rodger
2   Smith at Morris Nichols on behalf of defendant Viptela.
3   I'm joined by my co-counsel from McGuireWoods, Rachelle
4   Thompson, Jason Cook, and Shaun Hassett; and Ms. Thompson is
5   prepared to address the issues today, Your Honor.
6           THE COURT:  Okay.  Good afternoon to all of you.
7           I have my court reporter here with me.  And for
8   our record, it is our case of FatPipe Inc. versus Viptela
9   Inc., Civil Action No. 16-182-LPS-CJB.  This is the time we
10  set to talk about the dispute over the provision in the
11  protective order.
12          We received defendant's letter first, so let me
13  hear from defendant first, please.
14          MS. THOMPSON:  Good afternoon, Your Honor.  This
15  is Rachelle Thompson on behalf of Viptela.
16          This case, Your Honor, is a case between two
17  direct competitors; and in the PO, Your Honor, we have three
18  levels of designation.  We have an outside counsel only
19  designation for highly confidential information, we have a
20  highly confidential source code designation, and we have a
21  confidential designation.
22          The dispute today, Your Honor, relates to the
23  third designation, the confidential designation and who
24  at the client, Your Honor, should be allowed to see the
25  confidential information.

1          Viptela proposal is that the confidential
2   information should be limited to in-house counsel who are
3   not involved in competitive decisionmaking; in particular,
4   only one in-house counsel, Your Honor.
5          FatPipe, on the other hand, would expand that
6   to include any representative of FatPipe.  So it is not
7   limited to in-house counsel, and it is also not limited to
8   people who are involved in competitive decisionmaking.
9          That being said, Your Honor, this case is
10  completely different because at least we have allegations
11  where at least one person at FatPipe contacted Viptela's
12  prospective customers regarding the service that is at issue
13  in this case for direct competitors.  So in addition to case
14  law which generally limits the disclosure of confidential
15  information to people at companies that are not involved in
16  competitive decisionmaking, we have an additional concern here,
17  Your Honor, where at least we have evidence that at least
18  one person at FatPipe has already contacted our competitors.
19         Let me say at the outset, Your Honor, we are
20  not asking for a provision here that is manifestly unfair.
21  We're not asking for a provision that would not similarly
22  apply to Viptela as it applies to FatPipe.  Viptela does not
23  have any in-house counsel.  No representative at Viptela is
24  interested in seeing FatPipe's confidential information.
25         We have another provision in the protective

1   order, provision 6(c), that allows counsel for each party

2   to advise their clients accordingly as long as we do not

3   disclose the contents of that confidential information.  We

4   think that provision provides more than fair, more than

5   adequate protection for the attorneys here to advise clients

6   on this matter.

7           THE COURT:  Let me stop you there.

8           So Viptela also does not have any in-house

9   counsel you said; is that right?

10          MS. THOMPSON:  That is correct, Your Honor.

11          THE COURT:  So what would your position be on

12  the protective order simply saying nobody who is in-house on

13  either side, be they counsel or not, should get access to

14  the confidential information?

15          MS. THOMPSON:  The reason why we inserted the

16  in-house provision, Your Honor, is that during the pendency

17  of this case, both parties may end up engaging in-house

18  counsel.  And though we're not able to predict that, we

19  at least wanted to have that as a safeguard, just in case

20  circumstances change.

21          THE COURT:  Well, the plaintiff I think raises

22  the concern that the plaintiff entity as a whole will not be

23  able to be meaningfully involved in the litigation with your

24  provision.  It sounds as if your client is prepared to not

25  be meaningfully involved in the litigation; is that correct?

1		MS. THOMPSON:  That is correct, Your Honor.
2	And if Your Honor was inclined to say that for confidential
3	information, no one at either party could see it, Viptela
4	would not object.
5		THE COURT:  In terms of, I think I understand
6	why you don't want, if there is going to be a provision like
7	this, why you don't want the person who gets access to the
8	confidential information to be a competitive decisionmaker.
9		Why, in addition to that restriction, does it
10	have to be limited to an attorney?
11		MS. THOMPSON:  Because, Your Honor, we think
12	at least with attorneys, there are special safeguards in
13	place.  Attorneys understand their role in terms of
14	reviewing confidential information on the protective order,
15	and there is less risk, Your Honor.  It is less likely that
16	an attorney would reach out to a potential customer for
17	either party and rely on the information they saw that was
18	confidential in their interactions with potential customers,
19	Your Honor.
20		THE COURT:  FatPipe also makes the suggestion
21	that you don't really have much to worry about even under
22	their provision because whoever they designate won't have
23	access to your highly confidential information and as long
24	as your side is careful with your designations, it's not
25	really likely that you are going to produce anything that

1   could come back to harm you.  What is your response to that?

2                   MS. THOMPSON:  Thank you, Your Honor.

3                   We think that that suggestion, Your Honor, does

4   not provide a cure.  We think it will lead to additional

5   peripheral side issues where parties are going to be

6   disputing whether or not certain information was properly

7   designated.

8                   We, as a party, cannot just designate everything

9   that is highly confidential to avoid the consequence of a

10  representative at FatPipe seeing information.  We should

11  only designate highly confidential information as such if

12  it truly is highly confidential information, Your Honor.

13                  If we follow FatPipe's suggestion, I can see

14  down the road we're going to be back before you, arguing

15  over designation issues over who at FatPipe should be able

16  to see confidential information, and creating the safeguard

17  in a place right now, Your Honor, would just lead to

18  efficiencies of this case.

19                  THE COURT:  Can you give me an example of the

20  type of document that would be properly designated as

21  confidential but that if inadvertently was used by a

22  competitive decisionmaker at FatPipe could injure you in a

23  way that I should be concerned about?

24                  MS. THOMPSON:  Yes, Your Honor.  One example, and

25  this is without waiver of our rights to change the designation

1  on information of this nature, would be marketing information,
2  Your Honor.
3           Our client is a small product company.  To the
4  extent there is marketing information out there that the CEO
5  of FatPipe reviews and that CEO already contacted potential
6  customers of Viptela, when the CEO talked to that customer,
7  the CEO cannot unlearn or unsee what he has already seen as
8  confidential information at Viptela, and that person at FatPipe
9  could rely on that information, even without intending to do
10 so, in dealing with potential customers where here the
11 parties are directly competing in the same technical space.
12          THE COURT:  Okay.
13          MS. THOMPSON:  That would be contrasted with
14 something like technical information, Your Honor, which
15 under the PO would be designated as highly confidential, and
16 that technical information would not fall in the hands of a
17 representative at FatPipe.
18          THE COURT:  Okay.  Thank you very much.
19          Let me hear from the plaintiff now.
20          MR. LUBEZNY:  Good afternoon, Your Honor.  This
21 is Steve Lubezny from Perkins Coie.
22          In general, our position is, as Ms. Thompson
23 noted, there are already multiple levels of designation in
24 this protective order.  We have got the highly confidential
25 level for documents that are of a sensitive nature and we

1 have the regular confidential level.

2 If we remove this provision -- limit this
3 provision to where representatives of FatPipe effectively
4 cannot see the confidential information, we basically
5 collapse those two levels into one. There is no difference
6 in them. The rest of the requirements are identical as to
7 who can see those documents.

8 So the reason for these two levels of
9 designations is to allow the parties to have meaningful
10 input and meaningful ability to participate in litigation
11 strategy with regards to that kind of information. And, you
12 know, based on our experience, based on our expectations in
13 this case, a significant amount of especially the briefing
14 and arguments and memorandum and briefs in this case will
15 revolve around a lot of confidential information that is
16 not of any kind -- not significantly sensitive, commercially
17 sensitive in nature. And in our view, that is the kind of
18 information that the parties should be allowed to have a
19 representative participate in.

20 As you noted before, Your Honor, FatPipe does
21 not have an in-house counsel, so that provision in effect
22 eliminates FatPipe's ability to participate in the
23 litigation. They do want to participate, they do want to
24 have the ability to have input on the strategy, and so we
25 think removing that allowance for them is not a proper way

1    to go.

2                THE COURT:  Does FatPipe have anybody in-house

3    who would not be considered a competitive decisionmaker?

4                MR. LUBEZNY:  Your Honor, there really is not

5    such a person.  FatPipe is not a humongous company.  There

6    are two founders of the company that basically oversee the

7    day-to-day operations that are the ones that are involved

8    with the litigation, and that is basically the CEO of the

9    company and the CTO of the company.  So one of them will

10   effectively need to be the representative.  They are the two

11   people that are kind of involved in this issue.

12               THE COURT:  But isn't there then, unfortunately,

13   I suppose a very real possibility that the confidential

14   information could be inadvertently misused as they are

15   exercising their authority to make competitive decision-

16   making, including in a field in which you are a direct

17   competitor of the defendant?

18               MR. LUBEZNY:  Well, Your Honor, I think the

19   issue with that is -- the answer to that is what we raised

20   in our letter, and that really comes down to the reason we

21   have the two levels of confidentiality here.

22               Anything that there is a concern about that

23   could impact the compensation between the parties -- the

24   technical information, information about costs, information

25   about customers, that all should be labeled as highly

1 confidential, and that eliminates the concern.

2 Obviously, Viptela is FatPipe's customer as well
3 and FatPipe would have the same kind of concerns on our end
4 as well. There is certainly information FatPipe would not
5 want a Viptela representative, whether or not it is an
6 in-house counsel or otherwise, seeing.

7 But there is plenty of other confidential
8 information labeled confidential that is not of a sensitive
9 nature that is not going to lead to any kind of competitive
10 issues and that will still likely permeate a lot of the
11 briefing and issues in this case. And we believe the
12 creation of a lower tier allows the parties to at least
13 meaningfully participate and see that information.

14 THE COURT: Well, what about the marketing
15 example that Ms. Thompson gave us? It seems that that could
16 potentially be inadvertently misused to hurt them. Do you
17 disagree with that?

18 MR. LUBEZNY: Well, I do to some extent.

19 Obviously, these parties are competitors. I
20 would expect they know already full well what the other's
21 marketing materials and marketing information is. That is
22 information given to third parties. As a matter of course,
23 that's in some ways public to begin with.

24 Now, to the extent if Ms. Thompson is talking
25 about specific communications of perspective customers that

1    hasn't been made public yet, well, I would argue that that
2    is something that falls into a highly confidential tier as
3    it goes toward prospective customer communications.
4             THE COURT: Well, what about her concern
5    that you're essentially inviting them to overdesignate
6    confidential information as highly confidential and that
7    that ultimately is likely to lead to disputes between the
8    parties and then probably disputes in front of me?
9             MR. LUBEZNY: Well, I have two thoughts on that.
10   One is we have multiple designations in the protective
11   order already, and so given these types of protective
12   orders, there is always some type of possibility there is
13   going to be a dispute about designations regardless, so
14   that possibility doesn't necessarily go away here.
15            Two, I don't believe we're in a -- you know, at
16   least from our end, our client is not realistically looking
17   to be pouring through production of documents. What they're
18   most interested in is wanting the ability to see briefing
19   and be able to see arguments and not be foreclosed on that
20   front.
21            And so I think the likelihood of disputes is not
22   nearly that high unless it really relates to very specific
23   documents that end up in briefs before this court.
24            THE COURT: Ms. Thompson alluded to some other
25   provision that is agreed upon in the protective order

1    whereby perhaps you could request the opportunity to show
2    somebody a document they otherwise might not see.  I may
3    have misunderstood that, but is there some other provision
4    that might address what you have just asked or referenced?
5    And if not, might the best way to handle this be to add a
6    provision?  If what is important is attending arguments and
7    seeing briefs, perhaps you all could craft something that
8    would be more focused on that, Mr. Lubezny.
9                 MR. LUBEZNY:  Yes.  Let me address the first
10   question first.
11                I believe the provision Ms. Thompson is
12   referring to is simply one that allows counsel to advise,
13   outside counsel to advise the client about the litigation.
14                That provision doesn't have anything in it that
15   I'm aware of that would allow outside counsel to provide
16   any confidential information or go beyond what the permitted
17   scope of disclosure is.  So I don't believe that actually
18   adds anything to what we're talking about here.  Outside
19   counsel is still limited and would be unable to give any
20   detailed description or analysis if the information was
21   confidential and not allowed to be disclosed to the client
22   representative.
23                As for whether or not there is something we
24   could craft in that regard, I guess the answer is I'm not
25   sure.  It just seems to me as if that would end up kicking

1	the ball down the road to where every time somebody files

2	some confidential information, we necessarily then end up

3	in a dispute about can we now disclose it to a corporate

4	representative, and I feel like we will be back where we

5	started given Viptela's current position which is they don't

6	want a corporate representative to see any confidential

7	information.

8	            THE COURT:  Well, I guess I'm looking at the

9	definition of what you all have agreed to as what should be

10	designated confidential.  It looks like it's paragraph 8(a):

11	Confidential means it contains or reflects confidential

12	proprietary and/or commercially sensitive information.

13	            That sounds like the kind of information that

14	ordinarily we would not want a competitive decisionmaker to

15	have access to because it could inadvertently be used to

16	hurt a competitor.

17	            Tell me why that thinking shouldn't apply here.

18	            MR. LUBEZNY:  Well, again, Your Honor, I think

19	that those definitions are meant to be broad in that

20	confidential information can't contain that and obviously

21	highly confidential information is meant for information

22	that is additionally sensitive.

23	            From our end, if Viptela thinks it would help

24	avoid disputes, we are certainly agreeable to tweaking this

25	definition to make it clear that commercially sensitive

1    information should go into the higher tier.  We would have
2    no concerns about doing that.
3             But, in general, this was simply meant to be a
4    broad definition to include anything that a party can choose
5    to put into the confidential tier.
6             THE COURT:  Is there anything else, Mr. Lubezny?
7             MR. LUBEZNY:  Nothing from our end.  Thank you,
8    Your Honor.
9             THE COURT:  Okay.  Thank you.
10            Ms. Thompson, is there anything else?
11            MS. THOMPSON:  Just one last point, Your Honor.
12            Counsel for FatPipe said that what his client
13   was most interested in is, for example, the briefing.
14            I just want to point out that this Court has a
15   redaction process and the filing party is the party who is
16   actually responsible for filing the redacted copy, and that
17   copy can be shared with clients.
18            From our end, our client is perfectly willing
19   to allow us to advise them directly without disclosing the
20   confidential information, is not interested in seeing any
21   confidential information, and so we are not asking the Court
22   to do anything that Viptela itself is not willing to do as
23   well, Your Honor.
24            THE COURT:  Mr. Lubezny, is there anything else?
25            MR. LUBEZNY:  No, Your Honor.  Nothing else from

1  our end.

2              THE COURT:  Well, thank you for the helpful
3  argument.

4              On this one, I find myself ultimately on the
5  side of the defendant, and so I direct that the parties
6  submit jointly a version of the protective order that
7  reflects my siding with the defendant on this disputed
8  provision and get that to me by next Wednesday and I will
9  sign that.

10             I just simply think that there is a risk here
11 of inadvertent misuse of, in this instance, Viptela's
12 confidential information by FatPipe's competitive decisionmaker.

13             The fact that the competitive decisionmaker
14 could be a non-attorney heightens the concern.  I don't even
15 need to reach that, but the fact is that FatPipe only has
16 and only proposes that it be a competitive decisionmaker who
17 would have access if I were to take FatPipe's proposal to
18 confidential information of the defendant.  And as I noted
19 during the discussion, confidential information, it is a
20 very broad definition the parties have agreed to.

21             It contains "anything that contains or reflects
22 confidential, proprietary and/or commercially sensitive
23 information."  That would seem to include at least marketing
24 information, to include things that could be nonpublic
25 marketing materials, for instance, things that are being

1   developed or strategies.  And it may well be that in good
2   faith, Viptela feels that that is confidential information
3   but not highly confidential, and if so, that's the kind of
4   material that, again, I don't think it is pure speculation.
5   I think given limitations on human beings inherently and
6   being able to separate out information they know for certain
7   limited purposes, it just seems actually quite likely that
8   if that type of confidential information was known to the
9   competitive decisionmakers, the CEO or the CTO at FatPipe,
10  that that could lead to inadvertent harmful misuse in a way
11  that Viptela, as a direct competitor of FatPipe, should not
12  have to risk simply as a result of being sued by FatPipe.
13              I think what further confirms that this is the
14  right decision is it is equally burdensome to both of the
15  entities that are in front of me.  Both will have the same
16  limits on how involved in-house individuals can be in the
17  litigation and in how much they're going to have to rely on
18  their outside counsel to litigate.
19              So, again, my decision is for the defendant.
20              Are there any questions about any of that,
21  Ms. Thompson?
22              MS. THOMPSON:  No, Your Honor.
23              THE COURT:  Mr. Lubezny?
24              MR. LUBEZNY:  No, Your Honor.  Thank you.
25              THE COURT:  Thank you all very much.  Have a

1  nice weekend.  Good-bye.

2              (Telephone conference ends at 1:41 p.m.)

3

4      I hereby certify the foregoing is a true and accurate
   transcript from my stenographic notes in the proceeding.
5

6                         /s/ Brian P. Gaffigan
                          Official Court Reporter
7                          U.S. District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25